Thank you. Madam Clerk, please call the next case. 114.0352 Clemm Tank Lines v. Larry Petran. Counsel, you may proceed. Good morning, Your Honors. Counsel. May it please the Court, my name is Michael Curley and I'm counsel for Appellant Clemm Tank Lines. The central issue on this appeal, Your Honors, and the threshold issue is the employee versus independent contractor issue. Whether there was an employer-employee relationship under the Act. And as stated by the Illinois Supreme Court in numerous times, the question of whether an individual is an employee remains one of the quote-unquote most vexatious in the entire law of the workers' compensation. Roberson, Your Honor. Absolutely correct. And the law is clear from all those decisions over all those years that the most important of those factors is control of the manner, means, and method of the work at issue. We have in Illinois three cases that are in this context, over-the-road drivers. And this context is different because of the regulatory nature of over-the-road drivers. Those three cases, you're familiar with them all, they're the Early case from 1990, the Ware case from 2000, and then the Supreme Court case in 2007, the Roberson case. These cases apply the exact same analysis. There. Both Ware and Early are good law from this Court, as the Roberson Court confirmed. But here's one of the problems you may have. And this is, you know, obviously subject to debate. But because of the difficulty and because of the fact-specific nature, if you will, of a lot of these cases, the Supreme Court itself has said that deference has to be given to the Commission's decision because in very few cases are you not going to have some factors that weigh in favor of the employee-employee relationship and some factors you will not. Rarely do you have a clean case. No question. So the Court says if it's close, a lot of deference goes to the Commission's decision. And here they found there was the employer-employee relationship. A lot of deference does go to the Commission and a lot of deference should. But when you look at the factors and you look at what Roberson said, there's both a manifest weight issue and there's an error of law issue. And I'll talk about the error of law issue with regard to looking at the intent of the parties. There's no question the Commission does get deference if it's not against the manifest weight. The issue here, though, is looking at what Ware decided, looking at what Early decided, and looking at how Roberson from the Supreme Court applied those cases, there is a manifest weight issue. Because what you have is the ignoring the fact that the factors here, and there are factors on both sides, both sides could list probably a couple dozen factors. But when you look at Ware and Early and Roberson, and you look at the keys on the control of the work at issue in Ware, the gentleman was told the time to pick up his load. Not here, given a two-hour window. He was told what fuel to buy. He was told when he was hauling hazardous materials what routes to take. He was told to shave. He was required to attend safety meetings at the company. All the things I just listed aren't here. He was told where to park. Not here. The record is undisputed. He was told that he had no right to haul for other characters. Here... So if those factors are not here, you win the case and we reverse the Commission, is that what you're saying? If you look at the totality and what you have here is the only factors that point the other way are the regulatory factors. Carriers have to comply with the Department of Transportation regs and the EPA regs. And here, when you look at the list in Mr. Petrag's brief and in the arbitration decision, the factors that weighed against my client were the regulatory factors. Ware and Early and Roberson all say they are factors. We are not here, Your Honor, saying that those factors do not go on that side of the scale. We do agree that the right to control and the nature of the work are two of the most important factors. Definitely, Your Honor. Let me go through a few things that are here. Respondent required claimant to attend the hiring process and training required by the respondent. Correct. And under none of those... Does that weigh in favor of an employer-employee relationship? No, Your Honor, because under those cases, people can apply to be an employer-employee or they can apply to be an independent contractor. Here, Mr. Petrag specifically applied to be an owner-operator. It's right on his application and that triggers a different process. And you see in Mr. Petrag's brief a focus on Ms. Wolf and supposedly pre-printed materials, which he signed. As a matter of law, you're responsible for what you've signed. So I don't think that argument carries the day. Let me ask you this. You have an equipment lease, provides a respondent has exclusive possession, control, and use of the leased equipment, and the right to sublease the equipment to other carriers. Present in all cases because of federal law and in Roberson, Supreme Court, and in Ware, and in Early. They were factors. They're factors that tilt toward employer-employee, but they were not determinative. The Supreme Court and the Early case both made clear that the fact that you have that lease to comply with federal regs, and it's spelled out in Roberson in the Supreme Court's decision, doesn't make a conclusive determination as just one factor to be considered. And when you look at how Ware had those factors, how Early had those factors, and how Roberson applied those factors, we come out ahead on that manifest weight issue. Because again, the only factors against us were ones that all three of those cases say, don't tilt it. Now, Your Honor, you also pointed to the work. If we brought in somebody to paint our facility, we wouldn't be having the same issue in terms of is the core work the same. Here it is. Again, Early and Roberson both made clear that while that is a factor, when the employer cedes control to the worker, that can still carry the day. Was he totally unrestricted in his ability to haul for other people? He was, Your Honor. He had to take off the decals that we have. Did he have to get your permission? He did not have to get our permission. And in fact, that was one of the things that the arbitrator just got wrong. There's nothing in the record to support the arbitrator's notion that he was restricted in taking off the decals that's going to be present in every single case. Was he prohibited from carrying passengers in the truck without your consent? I believe that was in the agreement, Your Honor, the same as in those other cases. Did the respondent mandate to claim and install a computer in his tractor which could be used to track the vehicle's movements? Could be, but the record shows it was not used. That was one that was in. Whether it was used or not, did he mandate to claim and install a computer in his tractor to track the vehicle's movements? Did that happen? That did happen, but they didn't track it. They used it for the employees. And this company had employees and drivers. This case is interesting in that Mr. Petrak's brother, the record shows, was an employee driver. There's a big difference in the flexibility, obviously, that you have as an independent contractor. Who's Appleton? Appleton was a regional manager who's had oversight for these facilities. For your company, right? Yes, he's a senior executive. Did he testify claiming he was free to transport goods for other companies, but he could only do so after obtaining a respondent's permission? Did he need to get your company's permission to haul goods for other carriers? Yes or no? I don't believe that he... Before you give me your explanation, yes or no? No. He did not? So Appleton didn't testify to that? Are you lying? No, Appleton I think said that, but the record, the lease agreement, showed that he was free to do that, and in fact he did do that during his training. That wasn't the question that was asked. The question that was asked was, did Appleton, your agent, testify that he needed their permission? Yes or no? I think he did at some point. Yes, sir. So that doesn't indicate a right to control at all? If you're asking somebody, can I work for others and I want to do it on this time, and he had the right to solicit his own load, so I think that it doesn't indicate a right to control when you're talking about a balancing. And as you said, every case is going to have factors tilting both ways. Yes, but if somebody is truly, truly an independent contractor, they shouldn't need permission from another carrier, should they? I think asking... Are you going to tell me it doesn't matter? I'm not going to tell you it doesn't matter, Your Honor. It does matter. Everything matters. I'm saying when the weight, when you put it in the mix with everything else under the Supreme Court's decision... The difficulty I have with a lot of these arguments is people seem to be under the misconception that manifest weight means the case has to be decided one way or another. It can be decided either way. Your Honor, that's... And we have to give deference to the Commission. A fair and accurate point and a good segue into my next point, and that is the independent contractor agreement. The Madigan case from this Court stands for the proposition that if you have an independent contractor agreement, and if that independent contractor agreement is followed, that can be dispositive. Here, there's no question that there was an independent contractor agreement. There's no question it was entered into knowingly. There's lots of cases where someone has an independent contractor agreement and there's still a finding of employer-employee, and those are situations where notwithstanding it, the employer maintains the level of control. This is one where the employer ceded that control. Now... Well, you're talking about the intent, okay? And I don't think we dispute the intent of the parties is a factor to consider in determining the relationship. However, if you look at the case that you just cited where, it makes it clear that it's a minor consideration. Because as was stated in where, it would be inappropriate to allow employers to defeat the goals of the legislature to the artifice of labeling what is truly employment. So you can have a paper agreement that says this is the intent, but you've got to look at, in reality, the factors that are going at. The agreement itself isn't controlling. I could not agree more, Your Honor. You can. If you have a where, early, Roberson analysis that tilts toward taking control and exercising the control or the right of control, the employer loses. When you look at the factors as they were done here, and you hold those where factors, all of the things about attending meetings, about having a window, about not having the routes designated, about being free to choose his own equipment, all those things, about having his own insurance, we have all the factors other than the regulatory factors which don't carry the day, according to all three cases, go our way. Only the regulatory ones do, and the arbitrator's decision made that clear. The Commission makes no analysis to the contrary. The intent of the parties is critical, and Walker and Manahan both say that the intent of the parties must be considered. If you scour the record here, you will see that it was not considered by the arbitrator and it wasn't considered by the Commission. Roberson's Supreme Court decision went even further, and I'll quote from Roberson. The contract's designation of a person as an independent contractor may tip the balance by establishing the party's intent. That was prefaced by saying, in close cases, I don't think there's any doubt when you look at Roberson, when you look at this case, when you look at where, and when you look at early, that this is what the Supreme Court, what this Court, would consider a close case. The Roberson quote there, I think, is critical because there's no showing of intent, or of a consideration of intent. When you look at the intent here, eight years, the record is clear, eight years as an owner-operator independent contractor before applying to be an independent contractor with us, he applied to be an independent contractor with Clem. His own brother was a driver employee, so he knew the difference. He took out his own insurance. He told the doctors initially after the claimed injury, you see all the medical reports, all they say is owner-operator. He cited to his wife's insurance. This is a company that hires both independent contractors and employees. The concern that the Court rightly has in that quote, Your Honor, is employers looking to avoid their obligations under the law. Clem is a company that tries hard to do it right. They know that in order to have independent contractors, they cannot have that control, and they go out of their way not to. And they did here, and the record establishes it. Mr. Petrak wanted to have the control, as he had a right to do, and the added pay, as he had the right to do, of being an independent contractor. The flexibility, controlling his own hours, when he took his breaks, not attending meetings, all those things he had. Only after the relationship ended, and he was no longer driving for them because they terminated the relationship, and there's no retaliation claim, that's not an issue in this case. Only after that was ended, and he was only there about a month driving, two months under contract, did he for the first time claim employer-employee relationship. And even after the alleged injury in the first series of medical reports, he was writing owner-operator. And this is a person, a driver, with many years of experience, who knows the difference between those two. So in the employer-employee relationship, all I ask this court to do is apply our record factors here. Hold them up against the light against Roberson, against Early, and against Ware. And I think not only is it fair to say a good argument could be made, any court would say it could make a good argument, I think it's against the manifest way because the only factors are the regulatory ones that Roberson, the Supreme Court, said are not controlling. Should they even be factors? That's a fair point. I am following the Illinois Supreme Court, and they are. Should they be? I think that practically speaking they should be because there is an element of controlling, because there's a policy decision. There's no choice in it. There's no choice. And that's a fair point, Your Honor, to segue into. If the decision were to hold here, then there would be a rule of law essentially, a practical rule of law, that you cannot have independent contractor relationships and over-the-road carriers that are regulated. No, that's not really the natural implication here. It's a factual determination that the Commission is tasked with. When you read the quote from Roberson, it was from Roberson when it says, in a close call, this could be the deciding factor. Is that being directed to courts of review, or is that directed to the Commission in helping it decide the issue? Because, as you've acknowledged here, it's a manifest weight analysis. And when it's a close case, by definition, when it's a factual determination, we have to give the deference to the Commission. Yes, and I think it is directed to the courts too, because the Supreme Court looked at it, and in the Roberson case, they did uphold the Commission's decision, but only after careful analysis. And they didn't do a de novo review because it's applying facts to law. But there is one legal issue here. Well, before you go forward, when they say when it's a close case, are they talking about it being a close case employer-employee relationship or an independent contractor case, or are they saying it's a close case in terms of whether or not it's against the manifest weight? Because if they're talking about the former, you're really talking about a 50-50 proposition, a tipping of the scales. And how can that be a case that's against the manifest weight? It can be if the only factors on the side of employer-employee are the regulatory ones. It cannot be against the manifest weight of the evidence if it is a close case. That's impossible. It is impossible, because the very definition of manifest weight is the opposite conclusion must be clearly apparent. And so it can't be a close case. The only time you win on manifest weight is when it's not a close case. If we had ten regulatory factors and ten non-regulatory factors, and two or three of the non-regulatory were against this, I think that there would be a deference thing. When you have only the regulatory and the law being what it is, that that doesn't carry the day. And you have a mandate by the court to focus on the intent of the parties. Walker is a decision of this court, and Walker says it is a must. When you review this record, the intent of the parties was not considered and it wasn't given weight. And the law says that it has to be, and again, most employee versus independent contractor decisions, there's a real focus on making sure that employers are not evading their obligations under the Act. An employer that goes to the lengths that Clem did here to honor its obligations under the Act, an employee who was making a very significant amount of money as an owner-operator and testified that he knew the difference, and he specifically asked to be an owner-operator and up until after his last run, he was writing to doctors that he was an owner-operator. There are individuals who don't know the difference who can be taken advantage of, and the law stands in to protect those individuals. Mr. Petrak here was not one of those individuals. The knowing nature of his decision, the voluntary choice to be an independent contractor, and this employer's ceding control on the factors that the Supreme Court says can carry the day, the non-regulatory things, we think does, quote, call for a reversal. On the job injury question, Your Honors, Mr. Petrak had a prior history of back injury. Deference doesn't mean Don and Gliner's award, not using basic common sense. There were no witnesses to the accident. There was no evidence of the accident. And during the initial medical reports, two days after, he was describing things to the doctor. They're the doctor's writings, not his. There's not a mention in Dr. Fortuna's report. You would think it would be there. There's not a mention in the Neal Hospital report. There is also one decision by Dr. Lorenz later, February 24th,  where the injury by Dr. Lorenz is tied to this. And you see as the background to that a statement that he had no history of back problems and he was in fine health before he allegedly lifted these heavy hoses and had the injury. And it's clear from the record that Dr. Lorenz wasn't given the evidence about the back injury, the prior back injury, also going to a chiropractor. You don't need to be a doctor to know about herniated discs and back injuries. When I asked, I had the same injections that Mr. Petrak did, and I asked the doctor, and he said it's gravity and it's age. It just happens. And the prior record tying into Dr. Lorenz's opinion here shows that the one and only medical opinion and tying it to this alleged injury was one where the doctor was relying on misinformation given to him by Mr. Petrak. Again, the thrust of our argument here is the employer-employee relationship. I realize the standard of deference and the credibility of determinations as to that on-the-job injury, but I do think that a fair reading of the medical record, including the claimant's own testimony and attempts to say, I didn't know what I saw and my wife filled it out, give enough here to say that even on the job injury, it's against the manifest way of the evidence. Thank you very much. Thank you, counsel. Members, we'll move on. May it please the Court, Richard Alexi on behalf of the petitioner. Thank you, counsel. Let me start with intent. In recalling this record, which you read on Saturday and parts on Sunday, to be brutally honest with you, as I approach my 70th year, my recall isn't as great as it used to be, but I could not recall during counsel's argument where there were specific queries about the intent of Mr. Petrak. Mr. Petrak testifies in a very broken English format. The arbitrator made note of that. He also testified that he went to Bolingbrook because there was a recruiting thing and he heard about that from his brother, who was a driver for Clem Tank Lines. He thought he was applying for a job and then he found out the variations that were offered and then he was called after this initial screening process, called to do what? Go to Green Bay. Now, my understanding by reading Bob Neal Pontiac, a colleague of mine handled that many years ago, a man I worked with for a while, and Bob Neal Pontiac is an interesting dichotomy in terms of the true independent contractor situation and then direction and control. If you remember Bob Neal Pontiac, the man was hired to paint. And if you and I hire a contractor to paint, paint my living room, ask my wife what color, how much is it going to cost, when can you do it? The man comes in and he brings in whatever supplies he brings in. He paints the room. When he's done, if honey is happy, you write him a check and he's done. You exercise no direction and control. And we noted, remembering Bob Neal, that's kind of how it started and then the proprietor got a little concerned because he wanted the guy to click in on the time clock. Then he directed which walls to paint and which way to paint and on and on and on and on. And that became the issue in that case. And this court said, the guy was an independent contractor. He was a de facto employee. Mr. Petrak didn't read those contracts provided by Ms. Wolfe. Now, if counsel's argument were to be given credence to the level that he hopes it does, wouldn't prudence dictate that a corporation like Clem, who operates in seven states, who has a blend of both independent contractors and employers, would call in witnesses that are relevant and germane to the particular issues and indicia of employment as outlined in Roberson and Ware and so on. In fact, the same critical issues that were in the recent case of Steel and Materials versus the Illinois Workers' Compensation Commission. They didn't. So the testimony of Mr. Petrak, which is unrebutted is, he goes to these classes, two days. Then when he's done, he goes to see Ms. Wolfe, who gave him a stack of papers, I think was the verbiage he used. Did you read them? No. She showed me where to sign. Did she talk to you about workers' compensation insurance or any other insurance? She gave me a form to fill out and said I had to have it. Then he goes back and he waits after the Christmas holiday. He gets hired. He goes through a training program. But when he finds out that the method of training is going to be less than or more than one week, he goes to another gentleman from that firm, a Mr. Miller, who never got called. He said, hey, I've got to make some money. I didn't realize this training program was for three weeks. Can I take this load for this other group? Yeah, because the signage isn't on the tractor yet. Then he gets done. He goes through the training. Who provides the training? Clem. Then they have to certify his tractor. He brings his tractor. They go over it with whatever tooth comb level of fineness they use. And they say, well, you've got to get this fixed. You've got to get this fixed. You've got to get this fixed. And then you've got to put our decals. Not those Manhattan signs that you see on the Van Ryan all the time heading for Michigan. You know what I'm talking about. You go to T&A, and you see those guys pull the metallic sign off, and now it's got Joe Straub from Moments, Illinois, blah, blah, blah. And then when he gets done, he's got a load from Clem. Boom, the magnetic sign goes back on. And you know what's interesting? There's a development in this country and in this state, actually. Misclassification of employees. In Illinois, it just relates to the construction industry. But let's think about intent for a minute. A, federal regulations, whether we like it or not, mandate certain things that affect all of our lives depending on what we do and where we go. That's sort of his argument. He says it's a very simple case. Other than federal regulations, there are no factors that point to an employee-employee relationship. Well, I submit that the out-of-state cases that he cites may have some bearing on the issue of all those lousy federal regulations. If we didn't have to deal with them, God, the job creators would be blooming and we'd all be better off. Unfortunately, that's not happening. So we can't ignore the federal regulations. Well, what do they have to do with control? That's like your painter. Pretty soon we'll have the EPA say that you've got to have a China bristle brush to paint the inside of a person's home. Right. And so now we go and say that your contractor, you know, doesn't show up with a China bristle brush. But they say, oh, yeah, they don't do that. So we'll make the homeowner responsible for providing the China bristle brush. Now, does that make, then, the homeowner an employer? Well, depending on the nature of the EPA regulation versus the statute and the venue in which you would enforce it or sanction it, I'm at a loss to answer the question. But if I may. Well, I mean, it's somewhat of a problem now. Well, sure. I mean, that's where we're going. Your Honor, I worked for 10 years with a very famous, very ubiquitous and regrettably a place I should have stayed with and I'd be retired now, United Parsons, sir. Let's talk about those federal regulations for a second. Trucking outfits. Let's take Clinton. They have employees and they have contractors. OK. So what is their intent in creating this environment for people like Mr. Petrak? Economics. It's about the Benjamins. Because the fact of the matter is, this man from Philadelphia is not ignorant of not only what the federal regulations are, but I'm sure he's well schooled in all of the ramifications of the designation of independent contractor for every state that they operate in. So if I'm going to construct an environment for my company, if I'm going to be asked to draft an independent contractor agreement, and as I was called upon once by American Limousine, they said all you can do is no direction control. Well, what does that mean? If you got a ride to the airport, you call up the next guy on the list, you offer him the ride if he takes it, fine. And if he doesn't, no big deal. Carpet installers are independent contractors. Why? Because the carpet industry, and there are several cases that you folks have addressed over the years, call up Luis. Hey, we got to install for Tuesday. Can you do it? It's 700 bucks. I'll be there to pick up the rug Tuesday morning. I'll go to the household. I'll lay the carpet. Bing, bang, boom. I'm done. I get paid. Did anybody off the rug, did this guy get controlled in the way he installed the carpet? No. In the Bob Neal Pontiac, did that guy initially get told how to paint? No. If I ask the gardener to cut my lawn, do I tell him how to do it, go this way instead of that way, and whatever, and do it upside down? No. That's an independent contractor. They can do the same thing. They can do the same thing. Why do you have these factors that our courts keep saying you can look to that are regulatory factors? Oh, there's no question. Why? I'm asking why. Well, the courts are faced with a real dilemma, aren't they? Because there is no statutory enactment that gives you the checklist so that you can stay within either category of complete independent contractor or employment. So in a workers' compensation context, as we all know, the issue is who is to be protected? The injured worker. And if the injured worker is not protected, despite the fact that he's carrying hazardous materials in the trailer owned by these people, two days of training in terms of how you have to work, what you're supposed to do, how you're going to do it, and so on, that's direction and control. And when he went to the place where allegedly he overfilled the gas station, and this was testimony about him getting terminated, if you have the power of the employment death penalty, you're gone. Get out. I mean, let's face it. If he was an independent contractor, you just don't call him anymore. If I get a lousy paint job, I don't hire that painter to paint my bathroom, do I? Affirmative decision. Thank you, Your Honors. Are there any questions? I don't believe so. Thank you, Counselor. You may reply. Thank you. On the intent issue, we talked about it in my argument, but I just want to point to one of many things in the record. I'm holding the application. Owner-operator for Larry. There were different applications for owner-operator, independent contractor versus employee.  The call just to get it done. That is what we have here. When you look at this record, they said, here's where you have to pick it up. Here's where you have to deliver it. This is an employer that consciously said, if we get into the weeds, here's what route you have to take, here's what equipment you have to have, you have to shave, we're going to have you come to safety meetings. We know we can't have independent contractors. That's what's so, to me, contrary to the argument here. The law says we can. We did it the right way. And we just said, pick it up here, deliver it there. Get it done. Just like the cases that say that's independent contractor. They didn't read them. It doesn't carry the day as a matter of law. It's in the brief. It's been law as long as all of us have been practicing. He signed them. We didn't fight about whether it was his handwriting or looked like it. He signed them. He certainly had knowledge. It doesn't hold up. What about his last point? Why tell him he's gone if he's not your employee to begin with? You have a right. I think it's Robeson. If it's not, it's early. It's one of the things that's talked about. If you have a right to terminate somebody because of violation of company policies, you're in a bad way because it tends to employer-employee. If you have a right to end the arrangement, as Clem did here, that is not in the same bucket. It's a factor, but it's not in the same bucket. An employer-employee relationship can be terminated. An independent contractor relationship can be terminated. All of the contracts in the cases have the right to terminate. In fact, it was when Clem terminated it here that Mr. Petrak changed his argument and wanted to get the benefit of employers. General, why would it be necessary to terminate somebody if they're truly an independent contractor? Why not just not call them again? You don't have to do anything, do you? You have an agreement, and it says you're operating under this agreement. People terminate agreements when they don't want to work with somebody. If you hired me to paint your house and you said this contract will cover my house and my shed, but I have the right to end the relationship at any time if I don't like your painting, I can terminate it. That's an agreement. However, the equipment lease provided that they had to give written notice of termination. They had to give 30 days' notice for any reason, and they could terminate immediately by giving written notice if an illegal act was committed. But they gave no written notice. They just called them and said you're fired. That's correct, Your Honor, and if there was an argument, we're not here determining whether they've reached that agreement or not. He could make an argument they've reached the agreement. There'd be a question as to whether they've reached it. They could call an employee up and just say you're fired. And you could give an employee... And they treated you like an employee in that regard. And you could give an employee written notice, and as you've seen, many employee policies give progressive discipline and other things. They didn't comply with the written notice provision, but there's nothing in that agreement that says you can be fired for violation of company policies. That was by design. I want to talk about the Benjamins, as Mr. Relitsky called them, the economics. This company did, as I said, have employees and independent contractors. That relationship served both the company well, and it served Mr. Petrak and the other owner-operators well. There's huge benefit to drivers, including the right to work for others during the contract, as Mr. Petrak did, including the flexibility to pick and choose when you want to work. He was very well paid, and he earned all of that money. But the economics slash Benjamins, as he calls them, argument doesn't carry the day. What carries the day is the law. I heard a lot of policy argument that maybe the law should, say some, eliminate the right to have independent contractors so we don't have to have these debates. If and when it does, Clem will follow that law, Your Honor, in the same way that under the law as it exists now, including as to Mr. Petrak, it followed the law, it ceded control, it said pick up here, deliver there, follow the federal regs. Under the law, that does show manifest weight here. And with regard to the legal issue, even if you had concerns, as I do, about the deference given, the fact that intent of the parties wasn't even considered, and the fact that it is so telling here, and the statement of Robeson taken together are a legal issue that under de novo review call for reversal. Thank you, Your Honor. Unless you have any further questions. I don't believe there are. Thank you, Counsel. Thank you very much. We'll be taking your advice on this position. Thank you.